## WILSON VS. THE STATE.

The case of *Atkins vs. The State, ante,* referred to for the principles of law governing pleas of *auterfoits acquit.*

Our statute having made no provisions for trials by consent in *criminal* cases, other than a trial by jury, nothing short of the confession of the facts, or the finding of them by the verdict of a jury, can regularly authorize the judgment of the court against the accused, on an indictment for a felony, where the plea of not guilty is filed by himself or entered for him—even though the accused may waive a trial by jury and consent that the judge may try the issue.

### *Writ of Error to Arkansas Circuit Court.*

Hon. THEODORIC F. SORRELLS, Circuit Judge.

WILLIAMS & WILLIAMS, for plaintiff.

Mr. Attorney General JORDAN, contra.

Mr. Justice SCOTT delivered the opinion of the Court.

The plaintiff in error was indicted for larceny in the Arkansas Circuit Court. In the first count, he was charged with stealing a lot of bacon, of the value of ten dollars, the property of one Friend, whose given name was to the jurors unknown.

In the second the only variation was, that the bacon was the property of one Mary A. Friend. This was quashed on motion of the prosecuting attorney.

The accused being in custody of the sheriff, was brought into court where the indictment was read to him in proper person, his counsel being also present; and upon demand, whether or

39B

not he was guilty, put in a plea of which the following is a copy, to wit:

"STATE OF ARKANSAS, }
          vs.                  } *Larceny.*
GILBERT M. WILSON.         }

IN THE ARKANSAS CIRCUIT COURT, APRIL TERM, A. D. 1855.

Comes said defendant in proper person and defends, &c., and prays judgment of the indictment, and that the same be quashed, because he says, that at this present term of this court, the grand jury found a bill of indictment for the same offence charged in this indictment, and he was put upon his trial before the court, sitting as a jury, when after hearing the evidence and argument of counsel the court directed a non-suit, against the objection of defendant, and this he is ready to verify; wherefore, he prays judgment of the said indictment, and that the same be quashed.

                                        G. M. WILSON.

"I, Gilbert M. Wilson, do solemnly swear that the matters set forth in the foregoing plea, are true, so help me God.

                                        G. M. WILSON.

Sworn to before me, this 25th day of April, A. D. 1855.
J. G. QUATERMOUS, Clerk."

To this plea the State interposed a demurrer which the court sustained and the accused excepted.

The record then proceeds, as follows, to wit: "And the defendant refused to plead further, but stands mute, and the court enters a plea of not guilty, to which the State joins issue; and, by consent, this cause is submitted to the court sitting as a jury, and the court, after hearing the evidence, and hearing the argument of counsel, found the defendant guilty of larceny; whereupon, it is

considered by the court, that the said Gilbert M. Wilson, be taken from hence to the City of Little Rock, in the State of Arkansas, there to be confined in the jail and penitentiary house of the State of Arkansas, there to be confined at labor for the time and term of two years from this date.

To all of which finding and judgment of the court, the defendant at the time excepted, and filed his bill of exceptions," &c.

This bill of exceptions, after setting out that upon this "case coming on, and the defendant's plea in abatement having been held bad, on demurrer, and the plea of not guilty having been entered by the court, sitting as a jury, Oakly was introduced as a witness on the part of the State, testified," &c.

The substance of this testimony was, that about the 1st of March, 1855, in Arkansas county, Mrs. Friend, whose reputed husband had been absent some two months, came to the witness crying, and said her meat had been stolen; whereupon, he went to her house, and finding that the hinges of her smoke-house had been cut, he took the trail of some persons, and after following it about two hundred yards, found some salt and meat strings on a pile of cord wood, and from thence pursued the trail to a camp, where he found the defendant, apparently asleep, and another person, who was awake and attempted to run out by the witness. In this camp the witness found, covered with some boards, two or three hundred pounds of bacon, and some venison hams, worth $10. The two men had a jug of liquor, and appeared to be intoxicated. The witness took them in custody, and conveyed them to the Post of Arkansas, having first induced them to send the meat to Mrs. Friend, by a man named Robertson. Witness did not know the christian name of the plaintiff in error.

The only additional testimony introduced, was that of a Mr. Haller, who was one of the grand jury who found the bill. He simply testified that the christian name of Friend, was unknown to the grand jury.

This is the whole case, as it appears in the record. There

was no motion in arrest of judgment, or for a new trial, no exceptions to any ruling of the court in admitting or rejecting testimony, and nothing to show any opinion or ruling of the court, as to any point of law, otherwise than as we have already stated. And, therefore, it cannot be known whether or not, in arriving at the verdict in this case, the court found according to the weight of evidence, without any misconception as to any point of law; and, hence, in the absence of any means, whereby the plaintiff in error could have, by exceptions, put his finger upon any error of law, not now upon the face of this record, all proper presumptions are in favor of the verdict and judgment. Irrespective of any such supposed errors, however, the plaintiff in error assigns, as upon the face of this record ; 1st. That the court below erred in sustaining the demurrer to his plea.   2d. In proceeding to hear evidence and to try the issue upon the plea of not guilty, put in by the court for the defendant below, upon his standing mute ; and in rendering judgment against him upon the supposed verdict of guilty, so found against him, he excepting thereto at the time.

With regard to the question raised by the first assignment, the plea was clearly bad, according to the principles of law governing such pleas, so fully expounded in the case of *Atkins vs. The State*, just decided, that it is unnecessary to do more than refer to the opinion in that case as to this point, keeping in mind, that the jeopardy, attempted to be set up in this case, was incurred on another record, while in the case of Atkins it was upon the same record on which he was still held to answer.

The other assignment presents a new question in this court, which is not without difficulty ; mainly, however, because a practice has grown up in this State, to what extent we are not accurately informed, to submit by consent, issues of not guilty, in cases of misdemeanors at least, to the trial and judgment of the Circuit Court, sitting as a jury, as is expressly authorized by our statute in cases on the civil side of the court.

In the cases of *Guess vs. The State*, 1 *Eng. R.* 147; *Rector vs. The State*, *ib.* 187; *Robinson vs. The State*, 2 *Eng. R.* 122;

*McBride vs. The State*, 2 *Eng.* 374, this practice seems to have been tacitly allowed by this court, and may possibly have been in other cases not developed in our printed reports. We have not, however, found any such case, in some examination of these volumes, on a charge of felony, at the common law, or for that grade of crime since the passage of our statute defining felony in this State. But, whatever may be the difficulties on this score, the party in this case demands his legal rights, and although it may not be improbable that he is a drunken thief, and would be better off in the penitentiary than out of it, nevertheless his legal rights are as emphatically secured to him by our constitution and laws, as those of the best of our citizens. And besides, the face of this record, which we have pretty fully set out, manifests a degree of haste and carelessness, unless very great aid could be claimed for it at the expense of the clerk, not compatible with that sedate and careful administration of the criminal law, upon which much of the safety and security of the citizen depend.

No one will suppose that we have any other law in this State, providing for the trial of public offenders, than the common law, and such as has been enacted by the legislation of this country.

By the common law, when one was put to answer to a criminal charge by indictment, he either *stood mute*, or *confessed* the facts, or *pleaded* to the indictment. The two former were *incidents* to the arraignment, the latter was considered as the next stage of the proceedings.

If he stood mute, the court empanneled a jury to enquire whether he so stood obstinately, or by visitation of God. If the verdict was the former, judgment of guilty was rendered; and in the case of *Rex. vs. Lemercier* alias *LeBatt, Leach* 218, where the charge was murder, sentence of death was immediately passed, and the prisoner was executed accordingly. If the latter, and it appeared to the court that the accused could receive intelligence by signs, the accused was held to answer through that medium. If not so capable of receiving intelligence, the plea of not guilty

was entered for him by the clerk, and the trial proceeded, as if he himself had entered the plea; in which case it was the duty of the court to inquire touching all those points, of which the prisoner might take advantage himself, to examine all the proceedings against him with a cautious eye, and to render him every possible service consistent with the rules of law. *Rex vs. Jones*, *Leach*, 120 ; *Rex vs. Steel*, *Leach*, 520.

All this, however, is dispensed with under the provisions of our statute, which requires that if the accused "deny the charge in any form, or requires a trial, or if he refuses to plead or answer, and in all cases, where he *does not confess* the indictment to be true, the plea of not guilty shall be entered, and the same proceedings had as if he had formally pleaded not guilty to such indictment. *Chap.* 52, *Digest*, *page* 404, *sec.* 123.

Hence, the only incident of arraignment left, is that of the confession of the facts, which, if the accused does not make, the plea of not guilty is either put in by himself, or entered for him by the court. Upon a simple and plain confession, the court had nothing to do but to award judgment; but, in the language of Judge BLACKSTONE, "it is usually very backward in receiving and recording such confession, out of tenderness to the life of the subject ; and will generally advise the prisoner to retract it, and plead to the indictment." 4 *Blacks. Com.*, *p.* 329.

Hence, it follows, that in this country, by the common law, as modified by our statute, if the accused does not confess the facts the plea of not guilty is put in for him, either by his own act, or by the act of the court, and the issue upon this plea has to be tried.

By the common law, Judge BLACKSTONE remarks (4 *Black. Com.*, *p.* 312,) "the several methods of trial and conviction, established by the laws of England, were formerly more numerous than at present, through the superstition of our Saxon ancestors, who, like other northern nations, were extremely addicted to divination, a character which Tacitus observes of the ancient Germans. They, therefore, invented a considerable number of meth-

ods of purgation, or trial, to preserve innocence from the danger of false witnesses, and in consequence of a notion, that God would always interpose, miraculously, to vindicate the guiltless." *Ib.* *p.* 342.

He then proceeds to enumerate:

*1st.* Trial by *Ordeal*, which he says was abolished by 3 *Hen.* 3*d.*

*2d.* By a species of purgation, somewhat similar to the ordeal called the "*Corsneda* or morsel of *execration*," which, long before his day, was antiquated and disused.

*3d.* Trial by *Battle*, which although disused from the 7th year of Charles 1st, was not actually abolished in England, until by act of Parliament, in 1819 ; and 4th. A method of trial used in criminal cases, by the peers of Great Britain alone. Neither of which two latter have ever been supposed to have been in force in the United States by any court or judge. And finally in the last place : 5th. The trial by jury, or the country, *per patriam.* And at page 341, he remarks : "But upon indictments, since the abolition of Ordeal (and by battle under the act of parliament of 1819, neither of which were ever in force in the United States,) there can be no other trial but by jury, *per pais*, or by the country ; and, therefore, if the prisoner refuses to put himself upon the inquest in the usual form : that is, to answer that he will be tried by God and the country, if a commoner : and if a peer, by God and his peers ; the indictment, if in treason, is taken *pro confesso ;* and the prisoner in cases of felony is adjudged to stand mute, and if he perseveres in his obstinacy, shall now be convicted of felony."

Unless, therefore, the Legislature has provided some other mode of trial, that by jury remains the only mode known to our laws upon such a plea, whether interposed by the accused by his own act, or in his behalf, by the act of the court, when he stands mute. By our statute of "Criminal Proceedings," (*Digest, chap.* 52, *p.* 410,) it is provided in *section* 149 : " All issues of fact, in any criminal or penal cause, shall be tried by a jury, to be selected,

summoned, and returned, in the manner prescribed by law;" and, in *section* 166, "The proceedings prescribed by law in civil cases, in respect to empanneling jurors, the keeping of them together, and the manner of rendering their verdict, shall be had upon trials of indictments, and prosecutions for criminal offences, except in cases otherwise provided by this act."

The provisions are but declaratory of, and in affirmance of the common law, as we have already seen. The only other provisions of our statute, which relate to trials, are those of the *99th* and following *sections* of *chap.* 126, *Digest*, *p.* 812, prescribing regulations for practice on the civil side of the court: those in *chap.* 28, *sec.* 62, *Digest*, *p.* 234, relating to chancery proceedings, and those in *chap.* 95, *p.* 654, and *p.* 674, relating to civil and criminal proceedings before a justice of the peace.

The first are the only provisions that, in terms, have any approach to regulations for criminal trials, and if they apply, then it would seem that the provisions that we have already copied above, under the head of criminal proceedings, were quite unnecessary. These are: "*Section* 99. All issues of fact joined in any suit at law, in any court of record, shall be tried, either by the court, by jury, or by arbitration. *First.* The trial shall be by the court, when neither party shall demand a trial by jury. *Second,* The trial shall be by a jury, when either party shall demand such trial. *Third.* It shall be tried by arbitrators, on the agreement of the parties to refer the matter in dispute to arbitrators." *Digest*, *p.* 812.

No one would suppose that it was the intention of the Legislature to refer prosecutions for public offences to arbitrators; besides, the term "suits at law," to say nothing of the context, plainly indicates that these provisions relate solely to proceedings on the civil side of the court, and have no reference to criminal trials.

Hence, there would seem to be no other mode for the trial of a criminal issue, than that by jury. The difficulty is not obviated by any waiver of this mode of trial, because the Legislature

has provided no other mode, in lieu of it, in such an event, as it has in civil cases.

Nothing short of a confession of the facts, or the finding of them by the verdict of the jury, can regularly authorize the judgment of the court. If the accused would not only waive his right to a trial by jury, but go further, and withdraw his plea, and then confess the facts charged against him in the indictment, the court would be authorized to render a judgment against him; but so long as his plea of not guilty is in, there is no mode by which the court can dispose of it, although the accused may waive a trial by jury, with all its attendant privileges, and desire, ever so much, that the issue may be disposed of by a reference of it to the judge, or any other referee or arbitrator, and the prosecuting attorney may desire the same, and act in concert with the accused; for the simple reason, that the law makes no provision for any such referee or arbitrator, in criminal cases. The only provision is for a confession of the facts, or a trial by jury to determine them. If a judgment upon the finding of the judge, upon such an issue submitted to him, by consent, in a criminal case, can be upheld at all, it can only be so upon the principle, that this extra-judicial mode of finding the facts, amounts to a simple and plain confession of them, as charged in the indictment; and that the party is forever afterwards estopped from denying it to be such. But can a party be estopped by a record, which the law does not authorize to be made? And especially shall he be estopped by a record, which, in that view, is to *legally import his confession*, and which, nevertheless, upon its face, shows that at the very time the clerk was making it, the accused was taking exceptions to it; and, instead of submitting, was doing all he could to retract?

The law does not so move upon confessions. On the contrary, as we have seen, it is "backward, and generally advises the prisoner to retract and plead to the indictment."

Mr. Justice GRIER says, in the case of *Weems vs. George et al.*, 13 *How. United States Rep.*, p. 197: "When the case is sub-

mitted to the judge, to find the facts without the intervention of a jury, he acts as a referee by consent of the parties." This is unquestionably so, strictly, when he is not authorized by law to sit and find as a jury, as he is, in such case of consent, by our statute, in *civil cases*. And in cases, whether "civil or criminal," in Indiana, and some of the other States. *Rev. Code of Indiana*, 1831, *p.* 408; *The State vs. Mead*, 4 *Blackf. Rep.* 309.

Supposing, however, in cases where the accused and the State consented that the judge should hear the testimony, and find the facts, without the intervention of a jury, and the judgment of the court should be rendered accordingly, and it was done, and neither party took any exceptions at the time, that this should be properly held to be a mode of *nol. pros*, or of *confession of the facts*, as charged in the indictment, as the finding might happen to be one way or the other by the judge, and that in all such cases, the parties should be estopped from setting up any thing to the contrary ; this would not be such a case, because the accused, in this case, excepted at the time, both to the finding and judgment, and placed his exceptions upon the record by bill of exceptions.

There is still another objection upon the face of this record, which, in view of the principle frequently recognized in this court, as applicable to criminal cases in general, and especially to those where life is involved, that "the convicted is to be considered as standing upon all his legal rights that he has not expressly waived of record;" (*Bivens vs. The State*, 6 *Eng. Rep.* 457,) would, of itself, be worthy of examination, if that we have already considered was not sufficient to reverse this judgment. We mean that which might be taken to the record entry of the supposed consent of the convicted. It does not explicitly appear that he consented in proper person, or even that he consented at all. The entry shows that he was present in proper person, and that he had counsel also present, and that the State was represented by her counsel, and that he stood mute, when called on to plead. "In criminal cases, an express relinquishment of a

right should appear before the party can be deprived of it. "
*Commonwealth vs. Andrews*, 3 *Mass. Rep., p.* 132; *People vs.
McKay*, 18 *John. Rep., p.* 218. To make the record good, it
should show, substantially, that all was done at the trial, which
the law requires to be done; and this must be set down in fit and
expressive words. All that is written, from the beginning of the
trial to the judgment, is to be regarded as one entry, although it
may spread through many days; and therefore, the whole must
be looked to in order to ascertain its sufficiency in any one re-
spect. *Crist vs. The State*, 21 *Ala. Rep.* 148. But it is unneces-
sary to go at large into this objection, because, in the view that
we have already taken of the irregularity of the trial in this case,
the judgment would have been equally erroneous, even had the
record shown, in the most explicit terms, that the accused, in
proper person, had consented for the judge to try the issue, in
the stead of a jury.

The judgment will be reversed, and the cause remanded, with
instructions to the court below to proceed to a trial of the cause,
in accordance with law, and not inconsistent with this opinion.
And the consequent order must be made for taking the prisoner
from the penitentiary, and conveying him to the custody of the
sheriff of Arkansas county, to wait his trial.