THE STATE v. SANDERS, *Appellant.*

**Practice, Criminal:** EXPERIMENTS BY THE JURY OUT OF COURT. The counsel for the defendant in a criminal case, in the course of his argument to the jury after the close of the evidence, told them that they had a right to try for themselves whether worn-out boots, like those described by the witnesses for the State, would make such tracks in the dust or sand as they described, and advised the jury to make the experiment. Several members of the jury accordingly did make the experiment, out of court, without obtaining the leave of the court, and in the absence of the defendant. *Held,* that this was such misconduct as invalidated the verdict, and the defendant was not precluded from alleging it as ground for a new trial by the fact that it was done at the instance of his counsel. It was the duty of the court and the State's attorney to have warned the jury against making the experiment.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

*Bray & Cravens, Walser & Cunningham* for appellant.

*J. L. Smith,* Attorney-General, for the State.

NAPTON, J.—This was an indictment for an assault upon one George Burgoon, with intent to kill. The assault was committed on the night of the 26th of July, 1876, when Burgoon, who lived about three miles from Carthage, in Jasper county, was in his bed asleep between ten and eleven o'clock at night. That the assault was cowardly and with murderous intent, is not questioned, the only question being whether the defendant was the man who committed it. As the night was dark, the evidence was necessarily mainly circumstantial, and strongly pointed to

the defendant; there was also a mass of testimony equally strong conflicting therewith not indicating or implicating any other person, altogether making a case peculiarly proper for a jury. The only matters for our consideration are the propriety of the instructions and the admissibility of the evidence on which they were based, and the refusal of the court to set aside the verdict on account of alleged misbehavior of the jury.

The evidence in regard to the criminal intercourse between Mrs. Burgoon and the defendant—the quarrels between the husband and wife, and the law-suit between Burgoon and defendant, all growing out of this alleged intimacy, in our opinion, was proper for the consideration of the jury, and submitted to them under proper instructions. The only instruction to which serious objection is made is the 6th, and the only objection to this is, that there was no evidence to authorize it. After a careful examination of the testimony, extensive as it is, we have reached a different conclusion. We think there is some evidence to support the theory that defendant had something to do with the writing, or procuring of the writing, of the letters referred to in that instruction, although the preponderance of the testimony is undoubtedly to the contrary. But this was a matter for the jury. Burgoon testifies that the superscription on the envelope of the letter purporting to come from his wife was in Sanders' handwriting, and that he never wrote any letter to her after their separation and her removal to Carthage. The experts introduced by the defendant testified that all the letters produced were in the same handwriting, and some of them declared that the handwriting in all was that of Burgoon. It was for the jury to decide how this was, and, therefore, the 6th instruction to them, that "if they believed the letters, purporting to have been written by Burgoon, were written, or procured to be written, by the defendant, to be used as evidence in his favor, this may be considered by them in

determining the guilt of the defendant," was proper and authorized by the evidence.

The principal objection to the judgment in this case is based on an affidavit in regard to the misconduct of the jury. This affidavit was made by one Snyder, who was not a juryman. He states that on the morning after the jury retired he saw several persons, whom he afterwards ascertained to be jurors, experimenting with an old shoe, which had a hole freshly cut through the sole, to see whether a track made by it would be similar to the track testified to as being in the lane running west from Burgoon's house; that one of the jurors stepped up to him and said: "We have been trying tracks, look here," pointing to tracks made in the dust with an old shoe, "we have been making tracks with an old shoe," pointing to a shoe then in the possession of the juror; that the affiant remarked to the juror (not at that time knowing he was a juror) that the shoe shown him was not like the sole of the boot referred to in the evidence, to which the juror replied: "It would make a track anyhow;" referring, as the affiant supposed, to the boot spoken of by the witnesses on the trial. An affidavit of the juryman, Leathers, who was referred to in the above affidavit by the by-stander, was then read, which is as follows: "He was one of the juryman in the trial of Sanders; that L. P. Cunningham, in his argument after the close of the evidence, told the jury to just try worn-out boots, and see for themselves whether they would make imprints in dust or sand, as claimed by the prosecution, that boots worn-out like boots referred to in evidence would do, and told the jury they had a right to make the experiment for themselves, to satisfy their own minds on the point. The affiant then made the experiment and was seen and reported by Mr. Snyder."

An affidavit from another juryman named Jessup, is found in the record, which states "that during the trial of the above cause, W. F. Leathers, one of the jurors, told him he had taken an old shoe and cut a hole in the outer

sole and tried it in the dust, and they might talk to him as much as they pleased about a boot worn as the one testified to by the witnesses not showing the size and shape of the place worn-out, but he knew better; that he had tested that himself as aforesaid, and he knew it would show the marks of the place worn-out." What was done with this affidavit is not stated. It is well settled that jurors are not allowed to impeach their own verdict. *State v. Coupenhaver*, 30 Mo. 430, and cases there cited; *State v. Alexander*, 66 Mo. 148.

Disregarding the affidavit of the juror Jessup, which was clearly inadmissible, we have still before us the fact that a portion of the jury experimented, with a view to ascertain a fact testified to on the trial, and to test the credibility of the witnesses who testified in regard to that fact. That such experiments by a portion of the jury, or by all the jury, are improper, without leave of the court, is incontrovertible. In some States the jury are allowed by the court, even on criminal charges, but under charge of the sheriff, to view the ground where the offense is charged to have been committed, for the purpose of determining for themselves, as to the credibility of witnesses who were examined in the case. (45 N. H. 148, *State v. Knapp*.) It is not necessary to determine in this case whether our courts have any such power. There has been, undoubtedly, some relaxation of the rules prevailing anciently in regard to juries, but I have not found any case where the jury, after the cause was submitted to them, was allowed to receive evidence which could have any bearing on the case. The question here, however, is whether, after the jury are invited by the defendant's counsel to make certain experiments for themselves, and the jury, or a portion of them do so, the defendant can, after the verdict is unfavorable, take advantage of this misconduct of the jury, invited by himself. This looks like allowing a party to take advantage of his own wrong, and therefore has caused some hesitation on our part, but upon reflection, we have con-

cluded that the court and the attorney for the State must share the responsibility of such misstatements by allowing them to go uncontradicted. The judge, who presides at a trial of a criminal, should not allow the jury to be misled as to their duties or powers.

Indeed, regarding the affidavit of juror Leathers as a correct representation of the speech of Mr. Cunningham, it will be seen that the invitation was to the jury as a body, and not to any individual member or members of it, and it seems clear from the testimony of the by-stander, that only a portion of the jury participated in this experiment in the street upon the old shoe. It may be presumed that the result was communicated to the other jurors, thus introducing evidence on a very material point in the case, in the absence of the defendant and the court. If we consider the affidavit of Jessup, no presumption is necessary, but apart from that, the possibility of the experiment being so used is sufficient to establish its impropriety. Upon the whole, without especial regard to the present case, we are of opinion that it would be unsafe to further relax the well established rules governing the conduct of juries, and that we must, therefore, remand this case for another trial. Judgment reversed and case remanded. The other judges concur.

REVERSED.