[No. 20084. In Bank.—February 26, 1886.]

# THE PEOPLE, RESPONDENT, v. J. J. BUSH, APPELLANT.

CRIMINAL LAW — MURDER — ORDER FOR VIEW OF LOCUS IN QUO — MODIFICATION OUT OF COURT. — In a prosecution for murder, where the trial judge has made an order, under section 1119 of the Penal Code, for the jury to view the place of the alleged homicide, and the places at which certain other material facts occurred, a subsequent modification of the order by the judge, made out of court and without the knowledge of the defendant, is not a prejudicial error, if the modification was advantageous to him.

ID. — KEEPING JURY IN A BODY DURING VIEW. — In making the view, the jury were transported, under the charge of the sheriff and his deputy, to the places specified in the order, in two wagons, which were always in sight of each other. During an intervening night, they slept in separate rooms, to which there was no means of access except by a stairway, where the sheriff and his deputy were stationed. *Held*, that the rule requiring the jury to be kept in a body during the trial was sufficiently complied with.

ID. — WHISPERING BETWEEN JURORS. — The fact that the jury whispered among themselves, while viewing the place of the homicide, will not of itself warrant a reversal of the judgment.

ID. — ABSENCE OF DEFENDANT FROM COURT-ROOM — IMMATERIAL ERROR. — The absence of the defendant from the court-room for an inappreciable space of time during the trial is not a prejudicial error.

ID. — ARGUMENT OF COUNSEL — STATEMENT OF FACTS NOT IN EVIDENCE. — Statements made by the counsel for the prosecution, in his address to the jury, as to the impressions made on himself on hearing of the homicide, although objectionable, will not warrant a reversal, if the statements were made in reply to a similar argument by the counsel for the defendant, and the court subsequently instructed the jury not to consider such statements.

ID. — REPUTATION OF DEFENDANTS — OBJECTION TO FORM OF QUESTION — APPEAL. — On the trial, certain witnesses for the prosecution were questioned as to the reputation of the defendant for truth, honesty, and integrity. The counsel for the defendant objected to the questions on the ground of incompetency and irrelevancy, but made no specific objection

that the questions were not directed to the general reputation of the defendant for truth, honesty, and integrity. *Held,* that the defendant could not complain of the form of the questions.

ID. — VIEW BY JURY MUST BE HAD IN PRESENCE OF DEFENDANT — CONSTITUTIONAL LAW. — Section 1119 of the Penal Code, authorizing a jury to be taken from the court-room, pending a trial for murder, to view a place or places elsewhere, does not in its terms authorize such action to be taken unless the defendant be present during the whole time of the view; and if the view is in fact had in his absence, the right secured to him by article 1, section 13, of the constitution, of appearing and defending in person and with counsel, and of being confronted with the witnesses against him on his trial, is violated.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order refusing a new trial.

The facts are stated in the opinion of Mr. Commissioner Foote.

*Z. Montgomery, Levi Chase,* and *W. J. Hunsaker,* for Appellant.

The view by the jury, in the absence of the defendant, violated the rights secured to him by the constitution. (Const., art. 1, sec. 13; *People* v. *Green,* 53 Cal. 62; *State* v. *Bertin,* 24 La. Ann. 46; *State* v. *Sanders,* 68 Mo. 202; *Smith* v. *State,* 42 Tex. 444; *Benton* v. *State,* 30 Ark. 328; *Carroll* v. *State,* 5 Neb. 31; *Eastwood* v. *People,* 3 Park. Cr. 25; Wharton's Crim. Pr. & Pl., sec. 707; 1 Green Ev., sec. 366, and cases cited.) The absence of the defendant from the court-room warrants a reversal. (*Maurer* v. *People,* 43 N. Y. 1; *Prime* v. *Commonwealth,* 18 Pa. St. 103; *People* v. *Kohler,* 5 Cal. 12.)

*Attorney-General Marshall, Wallace Leach, J. L. Copeland,* and *E. W. Hendrick,* for Respondent.

The view by the jury of the *locus in quo* did not violate any constitutional right of the defendant. (Pen. Code, sec. 1119; *People* v. *Bonney,* 19 Cal. 446; *Rutherford* v. *Commonwealth,* 2 Crim. Law Mag. 15.) The inappreciable absence of the defendant was not a prejudicial error. (*People* v. *Bealoba,* 17 Cal. 399; *People* v. *Miller,* 33 Cal.

99.)   The remarks made by counsel in addressing the jury, as to his impression on hearing of the homicide, were not excepted to, and consequently no ground for a new trial.   (*People* v. *Ah Fook,* 64 Cal. 383; Wharton's Crim. Law, sec. 3011.)   No objection to the sufficiency in form of the questions asked concerning the reputation of the defendant for truth, honesty, and integrity can be made in this court, as no such objection was made in the lower court.   (*People* v. *Manning,* 48 Cal. 338; *Winans* v. *Hassey,* 48 Cal. 634; *Nightingale* v. *Scannell,* 18 Cal. 323; *Thompson* v. *Thornton,* 50 Cal. 142; *Henry* v. *S. P. R. R.,* 50 Cal. 176.)

FOOTE, C.—The defendant was tried upon an information for murder; he was found guilty by the jury of that crime in the first degree.   From the judgment of conviction, and an order denying him a new trial, he appeals.

There were numerous matters occurring during the trial, upon which the defendant bases his contention that the judgment and order should be reversed, and a new trial awarded him.   It appears from the record that upon the trial there was evidence given both by witnesses for the prosecution and the defense, in relation to the place where the homicide occurred, and of the relative positions then and there occupied by the defendant, the person killed, and the witnesses, and of certain natural objects there existent.

From the nature of that testimony, it appeared proper to the trial judge that the jury should view the place in which the offense was charged to have been committed, and the places at which certain other material facts occurred, and upon motion duly made by counsel for the people under section 1119, Penal Code, the court made the following order:—

" Whereas it appears to the court that it is proper and necessary that the jury should view certain places represented on the diagram used in this case, marked ' Map of

Road from Julian to house of J. J. Bush, San Diego County, by C. J. Fox, 1884,' hereinafter specified: It is ordered, that the jury be conducted in a body, in custody of the sheriff, to such places, and that the witness Valentine show to said jury the following places, viz.: 1. The hotel in Julian; 2. The blacksmith's shop; 3. The stable near said blacksmith's shop; 4. The road traveled by the witness and John Ivey the day of the killing of John Ivey, when they left Julian; 5. The place where he (Valentine) was when he first saw the defendant, J. J. Bush, after leaving Julian on the day of the killing; 6. The place where he (Valentine) was when he next saw the defendant, J. J. Bush; 7. The places on the road where the said Bush was when he (Valentine) saw him at the two times before mentioned; 8. The place where the killing of John Ivey took place; 9. The rock near by marked on said map; 10. The trail going to the house of J. J. Bush from the Julian road;—and that said sheriff return said jury into court without unnecessary delay.

"It is ordered that the interpreter, William Lyons, heretofore sworn as such in this case, accompany the witness Valentine, and that a copy of this order be furnished said sheriff, and be interpreted to said witness Valentine, so that he may be enabled to point out the said places."

The sheriff and Charles T. Murphy, his deputy, were then sworn in open court in accordance with the terms of section 1119, *supra.*

On the next morning, which was Sunday, the 26th of September, 1884, at an early hour, the judge of said court called upon the said sheriff at the hotel, where he and the jury were making preparations to start on the journey that had been specified in the said order, and obtaining from him the certified copy of said order in the sheriff's possession, but without the hearing of the jury, made certain changes in the same, viz., by striking out the parts thereof embraced under the fifth, sixth,

and seventh heads, by drawing a line with a pen and ink through the writing of them all. And then and there placed the following indorsement thereon:—

" The foregoing order is modified so as to strike out and omit the fifth, sixth, and seventh places mentioned therein.                    W. T. McNEALY, Judge."

And afterwards, on the convening of the court, an order was made in open court modifying the said original order in the manner above specified. The defendant claims that this modification was made out of court, without his knowledge, and that he did not know of it until the jury had gone on their way to the scene of the killing, and that no offer was made after the modification to allow him to accompany the jury.

The jury journeyed to the place of the alleged homicide in two wagons, one containing seven of them and the sheriff, and the other five of them and the deputy sheriff. During the trip the wagons were always in sight of each other. Julian was reached by the whole party that night, and the sheriff engaged for their occupancy at the hotel rooms on the second floor thereof, and at the rear of the building. There was a hallway between those rooms, and the sheriff and his deputy occupied a room at the head of the stairway. The jury occupied several rooms, but there does not appear to have been any way of access by stairs, or otherwise, to their apartments from the outside or inside of the hotel, save by the stairway where the sheriff and his deputy were stationed, and which station must be passed before any one could reach the jury.

There is no evidence whatever that the jury had, or could have had, any communication with any one but with each other and the officers under whose charge they were.

A man rode up to them in the road at one time, and asked if that "was the jury in the Bush case"; but he was immediately ordered off by the sheriff, and left at once.

On the morning after the night of their arrival at Julian, the jury in a body, in charge of the said sheriff and his deputy, were conducted to the places mentioned in the order of the court, and the various points and objects therein specified pointed out, and named to them by the witness Valentine, except those which had been stricken out by the court.

No other communication was made to the jury by Valentine, except that at one time he pointed with his hand toward a certain place, and commenced a sentence by saying: "The horse"—but he was immediately stopped by the sheriff.

The striking out by the judge of the fifth, sixth, and seventh clauses of the original order was done out of abundant caution, and with the intention of preventing any possible wrong being done to the defendant; and of that action merely he cannot be heard to complain.

The jury were transported upon their journey in a mode which, under the circumstances of this case, did not in any manner conflict with the rule that they should always, during such a trial, be kept in a body. And so it was as to the manner in which they slept.

And it does not appear anywhere in the record, during this journey, or at any time in the progress of the trial, that any sort of effort was made to tamper with the jury.

The point is made that error prejudicial to the defendant occurred, by his being absent from the court-room during a part of the trial. This appears to have been for an inappreciable space of time, if at all, while his counsel was preparing to begin an address to the jury. And the refusal of the court to correct its minutes so as to show that any such absence had in reality occurred, upon the evidence produced before it, was justifiable.

The fact that the jury whispered among themselves while viewing the locality where John Ivey was killed is not of itself sufficient error to warrant a reversal of the judgment in this cause.

Granting that the evidence given on the trial of this case was conflicting, nevertheless it was the province of the jury who heard it, and whose verdict as found was based upon it, to determine what evidence was entitled to credence.    And that they did so is no error prejudicial to the defendant.

The arguments made by counsel on both sides to the jury, wherein they stated their several impressions on hearing of the killing of Ivey by the defendant, were commenced, it seems, by the attorney for the defendant. And his example was followed in turn by counsel for the people.

The former asked that the latter be restrained by the court; but this that tribunal declined to do, because what was being said was in reply to a similar argument to the jury that had been made just before, by the objector.

That proceeding upon the part of the gentlemen of the bar was objectionable, but under the circumstances, the court having fully instructed the jury upon the law as applicable to the matter, we perceive no just cause of complaint against that tribunal.

The defendant also assigns as error the ruling of the court, on the objection made by his counsel, to questions put to witnesses for the prosecution, as to his reputation for truth, honesty, and integrity.

The objection as made was for incompetency and irrelevancy.    But no specific objection was made that the witnesses were not asked what the *general* reputation of the defendant was for truth, honesty, and integrity.    And while it is true that in putting such a question the word "general" ought always to be employed, yet it appearing that on the occasions here complained of neither the court nor the attorneys for the prosecution were advised by the objector that the form of the questions asked was what was aimed at, nor what particular form thereof was claimed to be indispensable, the defendant cannot be heard to complain for the omission of his counsel to

put the court in possession of the exact point of his objection.

There remains for discussion but one other point made by the defendant for the reversal of the judgment. But it is one of grave importance and of far-reaching character.

He claims that section 1119, which authorizes a jury to be taken from the court-room where a trial for murder is being had, to view a place or places elsewhere, does not in its terms authorize such action to be taken unless the defendant be present during the whole time of such view, and that if such view is in fact had in his absence, it is in violation of his constitutional right "to appear and defend in person and with counsel." (Art. 1, sec. 13, Constitution of California.) And that by the same section of that constitution, being secured in his right to be confronted with the witnesses against him on his trial, such right is violated unless he be present at such a view.

For wise and proper reasons, and in pursuance of a good purpose, in certain instances the trial court is authorized to send a jury trying a criminal cause to "view the place in which the offense is charged to have ·been committed, or in which any other material fact occurred"; but the law which confers this authority does not declare that this may be done without the presence of the defendant and his counsel.

It is impossible that a jury could go and view such a place without receiving some evidence, through one of their senses, viz., that of sight.

In the case at bar there was a conflict in the evidence which had been submitted to the jury, between that given by witnesses for the defendant and that by Valentine, the principal witness for the people. There is little doubt that the order made for the view was for the reason that the court thought it necessary for the jury to determine, by looking at various physical objects, extending along

a road for some distance, which was the true and reliable testimony as to the matters where this conflict existed.

They went to the places designated in the order, and Valentine, the witness, pointed out and named to them the objects therein embraced. The jury viewed them all, as they lay along the road, and therefrom must have determined which evidence, upon certain points, they deemed most worthy of belief. They thus received evidence in the absence of the judge, the defendant and his counsel.

The order made by the court did not require the defendant to go and be present with his counsel at such view. Suppose that upon the trial, after the witnesses had testified as to the occurrences which transpired at the places named in the order, instead of making the order, a photograph of all such places had been offered and allowed by the court to go in evidence to the jury, in the absence of the defendant and his counsel: can it be successfully contended that the defendant could be debarred from claiming and having awarded him a new trial for manifest error ?

It is often most important for the defendant and his counsel to be able to perceive exactly what impression is being made upon the jury by any portion of the evidence given in on his trial. And it may frequently happen that it is within their power then to introduce other evidence which might tend to disabuse that body of a wrong impression, or the counsel might by fair and legitimate argument be able to convince them of the right view to be taken of such evidence.

It is to insure to the defendant in all cases of such a nature a fair and impartial trial by a jury of his countrymen that the constitutional enactment was made the supreme law of the land.

The defendant objected to the order of view as made originally and as modified. He was not present when the jury inspected the various places named in that order,

and it is fair to presume that what they then and there saw tended to or did influence their verdict.

This court, in the case of *People* v. *Green*, 53 Cal. 60, where a similar order was made and action taken with the jury, used this language: "The action of the court was opposed . . . . to the principle which gives to a defendant the privilege of being confronted by the witnesses against him."

Judge Cooley, in his work on Constitutional Limitations, 5th edition, sec. 319, says:—

"In cases of felony, where the prisoner's life or liberty is in peril, he has the right to be present, and must be present, during the whole of the trial, and until the final judgment."

And in note 1 of the section *supra* this is said:—

"In capital cases the accused stands upon all his rights and waives nothing. (*Dempsey* v. *People*, 47 Ill. 325; *People* v. *McKay*, 18 Johns. 217; *Burley* v. *State*, 1 Neb. 385.) And further, as to the inability of a defendant to waive a constitutional right, see *Work* v. *State*, 2 Ohio St. 296; *Cancemi* v. *People*, 18 N. Y. 128; *Wilson* v. *State*, 16 Ark. 601; *Bond* v. *State*, 17 Ark. 290; *Brown* v. *State*, 16 Ind. 496."

In the case of *State* v. *Bertin et al.*, 24 La. Ann. 680, similar to the one in hand (except that there was no statute of the state of Louisiana authorizing a view of places), this language occurs: "Concede that in the absence both of the accused and the judge (for the judge did not accompany the expedition), the witness obeyed these instructions to the letter, which were as follows: 'To make no explanations, but to confine himself to pointing out appearances as described in said diagram.' It would result merely that the witness gave testimony on the premises out of court, and in the absence of the accused gives testimony, namely, by signs. And it needs no argument to prove that the effect of such pointing out in dumb show is as potent with the jury as if the verifica-

tion of the diagram had been enforced with a multitude of words.

"The object of law is the doing of real justice. It is but natural and proper, therefore, that criminal jurisprudence should protect the accused person by numerous safeguards, and among these is the rule that in general every proceeding of his trial shall take place in his presence, for peradventure, if he be present, he may at any moment, by a question, a suggestion, an argument, or even a glance, confound his accusers, vindicate his innocence, or at least mitigate his punishment. Especially is this proper at the taking of testimony against him, and therefore in this state, as in many others of this Union, it is provided by the constitution that the accused shall have the right to meet the witnesses against him face to face."

In Gaunt's Arkansas Digest, sections 1927, 1928, the statute authorizing a view in such a case as the one we are now discussing is almost *in totidem verbis* as our own section 1119 of the Penal Code. And in the case of *Benton* v. *State*, 30 Ark. 350, it is said: "The view of the place where the crime is alleged to have been committed, by the jury, is part of the trial, and may be an important step in the trial, and the presence of the prisoner at the view, in a case involving life or liberty, that he may have an opportunity to observe the conduct of the jury, and whatever occurs there, might be of the utmost consequence to him.

"The judge who presides at the trial and hears the evidence must determine whether or not a view is necessary; and if in his discretion he deems it necessary to order a view to be made, it would be better and safer for him to accompany the jury, if convenient, to see that nothing improper occurs at the view. If not convenient, he may appoint a person to show the jury the place to be viewed, sworn as directed by statute. If the jurors are familiar with the place, they may be conducted to it

by a sworn bailiff in charge of them, and there could be no necessity for the appointment of another person to show them the place."

At page 349, same case, this is said: "But though no witnesses are examined at the view, yet the jurors, from their observation of the place and its surroundings, may receive a kind of evidence from mute things, which cannot be brought into court to confront the accused, and are in their nature incapable of cross-examination."

By section 1043 of our Penal Code it is provided that the defendant must be present in person when on trial for a felony.

In Arkansas a statute of the same kind was in force, and the Supreme Court of that state said of it that it was "declaratory and affirmatory of the common law which would not allow any proceeding affecting life or liberty to be had in the absence of the prisoner, and when any step was to be taken in the cause the prisoner was to be present personally, lest in so important a matter he should be prejudiced. This care of the law for his safety was extended through the whole trial, from his arraignment to his final conviction or acquittal." (*Sneed* v. *State*, 5 Ark. 432; S. C., 41 Am. Dec. 102; *Cole* v. *State*, 10 Ark. 578; *Sweeden* v. *State*, 19 Ark. 209.)

We are of the opinion that it is not intended by section 1119, Penal Code, that a view to be taken by the jury of any place or places contemplated by that statute should ever be ordered by the court, or take place unless in the presence of the defendant. And in addition to the authorities above cited, the following bear out the correctness of that rule: (Wharton's Criminal Practice and Pleadings, 8th edition, sec. 707; *State* v. *Sanders*, 68 Mo. 202; *Smith* v. *State*, 42 Tex. 444; *Carroll* v. *State*, 5 Neb. 31; *Eastwood* v. *People*, 3 Park. Cr. 25.)

The judgment and order should be reversed, and cause remanded for a new trial.

BELCHER, C. C., concurred.

Searls, C., concurring.—I concur in the conclusion reached in the foregoing opinion, and hold that a defendant in a criminal case amounting to felony has a right to be tried in the presence of the court, of which the judge is an integral part, to be represented in every step of the case by counsel, to be personally present, and be confronted by the witnesses against him; and section 1119 of the Penal Code, so far as it is in conflict with or in any manner abridges these rights, or any of them, is unconstitutional and void.

The Court.—For reasons contained in the foregoing opinions, the judgment and order are reversed, and the cause is remanded for a new trial.

Note.—Justices Ross and Sharpstein agree with the views presented in the opinion of Commissioner Foote. Justices Thornton and McKinstry concur *also* in the opinion of Commissioner Searls.

Myrick, J., dissenting.—I do not concur in the judgment, or in the reasons therefor.

McKee, J., dissenting.—I dissent.   (Pen. Code, sec. 1119; *People* v. *Bonney,* 19 Cal. 427.)