[Crim. No. 836. Third Appellate District.—May 6, 1925.]

THE PEOPLE, Respondent, v. CHARLES CORDERO, Appellant.

[1] CRIMINAL LAW—VIOLATION OF SECTION 288, PENAL CODE—EXAMINATION OF WITNESSES—MISCONDUCT OF DISTRICT ATTORNEY—INSTRUCTIONS—ABSENCE OF PREJUDICE.—In this prosecution for a violation of section 288 of the Penal Code, in which it appeared that the attorney for defendant interviewed one of the boys involved in the offense alleged to have been committed by defendant and obtained from him some statements as to why he was testifying against defendant, and that the boy, at the interview with said attorney, made statements different from the testimony he gave on the witness-stand, it was error for the district attorney to make statements in effect accusing said attorney of tampering with and intimidating the prosecution's witness when, on the cross-examination of said witness, said attorney sought to ascertain from the witness which story was true; but the remarks of the district attorney did not warrant a reversal of the judgment of conviction where defendant did not submit any proposed instructions to the jury to disregard such remarks, and the jury was otherwise fully and carefully instructed.

[2] ID. — RIGHT OF DEFENSE TO INTERVIEW WITNESSES — UNPROFESSIONAL CONDUCT — INSTRUCTIONS — APPEAL.—The right of counsel for defendant to interview witnesses prior to trial of a case is just as sacred, and just as full and complete, as is the right of the district attorney to ascertain all the facts concerning the cause to be tried, and the exercise of this right by counsel for the defendant, in and of itself, constitutes no basis for a charge of improper or unprofessional conduct; but the appellate court cannot conclude that jurors, sworn to find a true verdict, will disregard their oaths and also disobey the instructions of the court to base their verdict upon the testimony alone, and will allow themselves to be influenced by one or two casual remarks which may be made by the district attorney, under the influence of passion, or when it has been charged that the case he is presenting against a defendant is a framed or put-up scheme to convict defendant.

(1)   16 C. J., p. 930, n. 93; 17 C. J., p. 299, n. 31 New; 40 Cyc., p. 2717, n. 5.   (2) 16 C. J., p. 847, n. 94, p. 848, n. 99 New.

2.   See 8 Cal. Jur. 621.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. B. Reynolds for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was prosecuted for the offense denounced and made punishable by the provisions of section 288 of the Penal Code. Following the defendant's conviction, a motion for a new trial being denied, the defendant appeals. In prosecuting this appeal, no question is tendered to the court as to the sufficiency of the evidence, if believed by the jury, to support the verdict. We have read all the testimony set forth in the transcript, and are satisfied therefrom that no question could be raised as to its sufficiency, but the nature of the testimony is such as to preclude its being set forth in this opinion.

The points relied upon for reversal relate simply to remarks made by the district attorney during the course of the examination of witnesses and in his closing address to the jury. Appellant also sets forth in his brief that certain remarks of the court were prejudicial, but as an examination of the transcript discloses no objections to the remarks made at the time, and no request made by counsel that the court instruct the jury to disregard such remarks, it is not necessary for us to set forth the remarks of the court, or to make any further comment thereon.

[1] The testimony relied upon by the prosecution being an action based, as we have said, on section 288 of the Penal Code, was necessarily, in large part, that of the testimony of small boys. It appears that the attorney for the defendant interviewed one of the boys involved in the offense alleged to have been committed by the defendant and obtained from him some statements as to why he was testifying against the defendant, and that the boy, under the examination conducted by the attorney for the defendant at the interview referred to, made statements different, or, at least, alleged to

be different, from the testimony he had given on the witness-stand. It also appears that the defense in this case was based upon the claim that the boys alleged to have been tampered with by the defendant had framed the case against the defendant out of spite, owing to some differences relating to money matters. It was during the cross-examination of the witnesses who had been interviewed by the attorney for the defendant prior to the trial that the remarks of the district attorney, hereinafter set forth, were made, which appear in the transcript as follows: "Q. And didn't you tell me on that occasion that the story wasn't true, that you boys got together and framed it by reason of the fact that you were sore at Charlie Cordero? A. Yeh. Q. That is what you told me yesterday? A. Yeh. Q. Now, is that the truth, Mario? Did you tell me and your father the truth? Was what you told us yesterday true, Mario? Do you understand that? Mr. Henderson: Well, let him alone. See if he understands it. We will see if you are tampering with witnesses or what. Mr. Reynolds: May it please the Court, I assign that remark upon Mr. Henderson's part as prejudicial error to this defendant. Mr. Henderson: We will find out whether it is prejudicial error. Mr. Reynolds: All right, and I assign this remark— Mr. Henderson (interposing): By the time we get through with this witness, Mr. Reynolds, we will find out."

At this time, it appears from the transcript that a brother of the witness was alleged to be shaking his hand at the witness, whereupon Mr. Henderson said: "Let us get hold of him. We will find out about this thing, whether he is framing these witnesses or not. Mr. Reynolds: Again, I assign that remark of the district attorney as prejudicial error and I ask the court to admonish the jury to pay no attention to that remark."

At a later period in the trial, during the course of an argument participated in by the district attorney and counsel for the defendant, the district attorney used these words: "I call it intimidating the witnesses for the prosecution," referring to interviews had by counsel for the defendant with witnesses who appeared for the prosecution.

As to the evidence itself, it is clear that the objections thereto made by counsel for the prosecution were correctly sustained. It was for the jury and not for the witness to

determine which of the conflicting statements, if the statements were conflicting, were true. The different statements alleged to have been made by the witness were allowed to be admitted by the court, and the circumstances under which the statements were made, and the jury also had the witnesses before it, and could determine whether the witness was confused in his statements, was endeavoring to tell the truth, or whether he was endeavoring to assist in framing a case against the defendant.

It does not appear that the defendant submitted any proposed instructions to the jury to disregard the remarks of the district attorney, nor does it appear that any further attention was paid thereto. The remarks, in and of themselves, while uncalled for and remarks that should not have been made, taken in connection with the testimony adduced under the claim of the defendant that a case had been framed against him, do not, we think, constitute prejudicial error, warranting a reversal of the case. The jury was carefully instructed that they should consider nothing in arriving at their verdict except the evidence, which had been admitted by the court and allowed to remain, that they were not to allow passion or prejudice to govern them in their deliberations, but that they should find their verdict upon the testimony, and the testimony alone. These are not the exact words of the instructions, but correctly state their substance upon these points.

[2] In the course of his address to the jury the district attorney referred to the fact that counsel for the defendant made no attempt to impeach the testimony of one of the witnesses named Joe Senga, and that the defense's attack was principally directed against the witness named Mario. We find nothing of merit in this assignment of error, and our attention has not been called to anything contained therein which would warrant this court in interfering with the verdict of the jury. The right of counsel to interview witnesses prior to a trial of a case is just as sacred, and just as full and complete, as is the right of district attorneys to ascertain all the facts concerning the cause to be tried. The exercise of this right by counsel for the defendant, in and of itself, constitutes no basis for a charge of improper or unprofessional conduct, but we cannot conclude that

72 Cal. App.—34

jurors, sworn to find a true verdict, will disregard their oaths and also disobey the instructions of the court to base their verdict upon the testimony alone, will allow themselves to be influenced by one or two casual remarks which may be made by counsel, under the influence of passion, or when it has been charged that the case he is presenting against a defendant is a framed or put-up scheme to convict the defendant.

We find nothing in the case justifying a reversal. It is, therefore, ordered that the judgment and order of the trial court be and the same are hereby affirmed.

McDaniel, J., *pro tem.*, and Finch, P. J., concurred.