[Crim. No. 5609. In Bank. June 21, 1955.]

In re EDWARD D. MALONE, on Habeas Corpus.

Edward D. Malone, in pro. per., and James A. Clayton, under appointment by the Supreme Court, for Petitioner.

Edmund G. Brown, Attorney General, Doris H. Maier and G. A. Strader, Deputy Attorneys General, for Respondent.

SCHAUER, J.—Edward D. Malone is imprisoned under a judgment of conviction of grand theft, rendered November 18, 1948, pursuant to a jury verdict of guilty. By petition for habeas corpus he seeks release from custody. He attacks (1) the validity of such judgment, which he claims was rendered after deputy sheriffs had prevented him from presenting his defense, and (2) the right of this state presently to hold him after jurisdiction over his person was assertedly waived by California in 1950 when petitioner was paroled and taken to Arizona to answer a charge of crime there. The basis of each of these claims is hereinafter set forth. We have concluded that each claim is without merit.

Petitioner prepared and filed his petition for habeas corpus and various documents supplemental thereto in propria persona. Thereafter, pursuant to petitioner's request, Mr. James A. Clayton, who consented to serve, was appointed as attorney to represent petitioner. The return to the order to show cause shows that petitioner is held under a judgment of November 18, 1948, regular on its face, that petitioner was convicted of "Grand Theft, a felony" and sentenced "for the term prescribed by law." (Section 489 of the Penal Code provides that the maximum punishment for grand theft is 10 years.)

(1) *Claimed Mistreatment of Petitioner by Deputy Sher-
iffs which Assertedly Prevented Him from Presenting
His Defense Before the Jury.*

Petitioner alleges that while he was awaiting jury trial,
"after it had been duly stipulated that petitioner would con-
duct his own defense; the deputy Sheriffs Okie Morris,[1] and
Ollie Gastineau, did illegally, maliciously, and feloniously
deprive the petitioner of the right to use his own law books for
the purpose of preparing a defense. That said deputies did
illegally, maliciously, and intentionally beat him severely for
making notations for the purpose of a defense. That said
deputies did destroy petitioner's jury instructions before he
could reach the court with same. That said deputies
threatened to kill the petitioner upon his return to jail, if he
attempted to inform the court of the treatment. That said
deputies did maliciously, illegally, feloniously, and with ill
intent, take the petitioner into a room just before his final
appearance in court, and just before his closing argument to
the jury, and in said room of the Stanislaus County jail, did
beat the petitioner so severely . . . that, petitioner had great
difficulty in talking after reaching the court. That said
deputies again threatened to kill the petitioner if he attempted
to inform the court. That for the foregoing reasons the peti-
tioner could not prepare any defense whatsoever." Petitioner
further avers that when he was taken into court after the
last-mentioned beating he told the judge "that he was sick,
and that he was having great difficulty in talking, and that he
would appreciate the Court's allowing him a few minutes
rest, so that he might recuperate, whereupon, the Court stated
that, it did not seem necessary, and that the Court did not
wish to waste time."

Section 13 of article I of the state Constitution provides
that "In all criminal prosecutions, in any court whatsoever,
the party accused shall have the right . . . to appear and de-
fend, in person and with counsel."

While petitioner does not spell out his theory of deprivation
of his right to defend, it seems to be as follows: Although a
defendant is not entitled to special privileges because he elects
to represent himself (see *People* v. *Chessman* (1951), 38 Cal.
2d 166, 174 [238 P.2d 1001]), an accused's right to quietly
prepare his own defense in his own cell without interference

---

[1]This deputy sheriff is sometimes referred to by petitioner as "Okie
Morris" and sometimes as "Okie Morse."

by beatings, threats of death, and destruction of papers by his jailers is closely related to the established right to counsel of accused's choice, with time and opportunity to consult privately with such counsel so that there can be adequate preparation for trial (see *Powell* v. *Alabama* (1932), 287 U.S. 45, 69-71 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]; *House* v. *Mayo* (1945), 324 U.S. 42, 46 [65 S.Ct. 517, 89 L.Ed. 739]; *People* v. *Simpson* (1939), 31 Cal.App.2d 267, 270-272 [88 P.2d 175]; *People* v. *Kurant* (1928), 331 Ill. 470 [163 N.E. 411, 415]; *Turner* v. *State* (1922), 91 Tex. Crim. 627 [241 S.W. 162, 23 A.L.R. 1378], and Annotation, 23 A.L.R. 1382), the right to have a reasonable time to prepare for trial (*People* v. *Sarazzawski* (1945), 27 Cal.2d 7, 17 [161 P.2d 934]), the right of accused to be present at all stages of the trial, at least where his presence bears a reasonably substantial relation to his opportunity to defend (*Snyder* v. *Massachusetts* (1933), 291 U.S. 97, 106 [54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575]; *People* v. *Bush* (1886), 68 Cal. 623, 628, 631-634 [10 P. 169]), the right of accused to be not merely physically in attendance but also physically and mentally able to understand what is going on (*People* v. *Berling* (1953), 115 Cal.App.2d 255, 267-268 [251 P.2d 1017]), the right of accused to represent himself if he desires and is competent to do so (*People* v. *Rose* (1919), 42 Cal.App. 540, 553-554 [183 P. 874]; annotation, 17 A.L.R. 266), the right to interview witnesses before trial (*People* v. *Cordero* (1925), 72 Cal.App. 526, 529 [237 P. 786]), the right to consult privately with a psychiatrist in the preparation of a defense (*In re Ochse* (1951), 38 Cal.2d 230 [238 P.2d 561]), and the right not to be brought before the court in manacles where no need for such restraint is shown (*People* v. *Harrington* (1871), 42 Cal. 165, 168 [10 Am.Rep. 296]). Deprivation of the rights concerned in the last cited cases, like the asserted conduct of the deputy sheriffs here complained of, bears substantially upon the accused's preparation and presentation of his case.

In the Harrington case, *supra*, it is said (p. 168 of 42 Cal.), "any order or action of the Court, which, without evident necessity, imposed physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense." The Harrington case was one where a judgment of conviction was reversed on appeal, and the other cases cited in the preceding paragraph do not con-

cern the availability of habeas corpus to attack a final judgment of conviction. Holdings of this court and the United States Supreme Court establish that invasions of some of those rights affecting the presentation of a defense furnish grounds for attack by writ of habeas corpus upon a final judgment of conviction. (*Hawk* v. *Olson* (1945), 326 U.S. 271, 276, 278 [66 S.Ct. 116, 90 L.Ed. 61]; *In re Masching* (1953), 41 Cal. 2d 530 [261 P.2d 251].)

■ It is unnecessary in the present case to define the extent of the assertedly invaded right of petitioner, or to decide whether an invasion of such right would make an ensuing judgment vulnerable to attack on habeas corpus, for petitioner has not established the factual basis of his claim. The truth of his allegations has been submitted to us upon conflicting affidavits, and we have resolved their averments against petitioner.[2]

Petitioner's averments of mistreatment (threats, beatings, deprivation of books, destruction of notes) by deputy sheriffs Morris[3] and Gastineau are denied by affidavits of those officers. The allegation "That said deputies did destroy petitioner's jury instructions before he could reach the court with same" is shown to be untrue by records of the superior court which include instructions requested by the defendant and refused, some as inapplicable and some as covered by instructions given.

### (2) *Asserted Waiver of Jurisdiction over Petitioner when He was Paroled.*

As previously stated, on November 18, 1948, petitioner was convicted of grand theft, the maximum punishment for which is 10 years' imprisonment (Pen. Code, § 489). The following facts appear from the return of the warden to the order

[2]The burden of proof was on petitioner to prove the facts which render his detention illegal (see e.g., *In re De La Roi* (1946), 28 Cal.2d 264, 269 [169 P.2d 363]; *In re Wallace* (1944), 24 Cal.2d 933, 938 [152 P.2d 1]; *In re Bell* (1942), 19 Cal.2d 488, 501, 504-505 [122 P.2d 22]; *In re Connor* (1940), 16 Cal.2d 701, 707 [108 P.2d 10]) and neither he nor respondent offered evidence other than by affidavit or requested a reference. Moreover petitioner expressly requested the court to decide the matter on the affidavits and the respondent acquiesced in this request. Under such circumstances the issues will be resolved on the evidence submitted. (*In re Berry* (1955), 43 Cal.2d 838, 845-846 [279 P.2d 18]; *In re De La Roi* (1946), *supra*, 28 Cal.2d 264, 276; *In re Bell* (1942), *supra*, 19 Cal.2d 488, 505; *In re Connor* (1940), *supra*, 16 Cal.2d 701, 707; see also *Soares* v. *Ghisletta* (1934), 1 Cal.App.2d 402, 404 [36 P.2d 668]; *Falk* v. *Falk* (1941), 48 Cal.App.2d 780, 789 [120 P.2d 724].)

[3]The People filed affidavits of Riley F. Morse and Ollie Gastineau. A letter of a deputy attorney general states that this "Riley F. Morse" is "named in the petition for habeas corpus as 'Okie' Morse."

to show cause and other documents filed by the attorney general: On November 7, 1949, the Adult Authority ordered, "Term fixed at three years. Granted last eighteen months on parole. Subject to Hold." On April 19, 1950, petitioner signed a "Waiver of Extradition" by which he agreed to accompany an agent of Arizona as a prisoner from San Quentin to Arizona to answer the charge pending there. On May 22, 1950, petitioner signed an "Agreement by Parolee" by which he waived extradition to California from any other state and any territory outside the United States, and agreed to abide by the usual conditions of parole. On October 17, 1951 (before expiration of petitioner's California term for grand theft as originally fixed), the Authority ordered his parole revoked, his term fixed at maximum, and his return to prison; after hearing, the Authority on January 15, 1952, again ordered revocation of parole.

The petition for habeas corpus alleges that "on May 22, 1950, petitioner was duly extradited from . . . California; that he was placed in chains, and taken to . . . Arizona, for the purpose of trial." A letter from petitioner to this court dated July 1, 1954, says that he "was never on parole, but instead, while still serving sentence, was extradited from the State Prison at San Quentin, to the State of Arizona, for the purpose of trial, conviction and service of a new sentence"; he was "transported to Arizona, against my will, and without my consent." Petitioner, according to his allegations, was tried and convicted in Arizona and placed on probation for five years; he then returned to California and was convicted of vagrancy in this state.

 Petitioner relies upon the proposition that "where a prisoner serving a sentence is extradited as a fugitive from justice and delivered to another State, jurisdiction over his person is forever waived by the asylum State." (*People ex rel. Barrett* v. *Bartley* (1943), 383 Ill. 437 [50 N.E.2d 517, 521, 147 A.L.R. 935] ; accord, *In re Whittington* (1917), 34 Cal. App. 344, 347 [167 P. 404].) This proposition does not apply where a prisoner accepts a California parole with the conditions that he is to be released to the authorities of another state and, if he should be released by them prior to expiration of his California sentence, he will be returned to the custody of California authorities. (*In re Marzec* (1945), 25 Cal.2d 794, 798 [154 P.2d 873] ; *In re Kimler* (1951), 37 Cal.2d 568, 575 [233 P.2d 902].) The purport of petitioner's "Waiver of Extradition" and "Agreement by

Parolee" brings him within the holdings of the Marzec and Kimler cases.

Since the essential allegations of the petition for habeas corpus appear to be untrue and petitioner is held under process legal on its face, no cause for issuance of the writ appears.

For the reasons above stated, the order to show cause is discharged and the petition is denied.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.