Hull, J...
This is a proceeding in error, brought to reverse the judgment of the court of common pleas. The plaintiff in error was indicted for murder in the first degree, the indictment charging him with shooting and killing his wife, Loretta Reighard, on the 1 ith day of August, 1900. He was found guilty under this indictment, of murder in the second degree. Motion for a new trial was filed and overruled and judgment entered upon the verdict and defendant below sentenced to imprisonment in the penitentiary for life.
*342 There are three general errors complained of here:
1. That the jury ordered by the court to view the premises where the alleged murder occurred, did view the premises in the absence of and without the presence of the defendant.
2. That the court erred in its charge to the jury, both in the instructions that were given and in the refusal to give instructions requested by the defendant below.
3. That the court erred in overruling the motion for a new trial, on the ground of misconduct of the jury — it being claimed that there was misconduct on the part of the jury after they retired, for which the verdict should have been set aside.
I will take up the first claim: that the court erred in ordering a view of the premises without the presence of the defendant below. This is the chief question in the case and the one that was discussed the most by counsel.
It appears that at about the close of the examination in chief of the first witness called by the state, the defendant, through his counsel, suggested that it would be best for the jury to view .the premises and moved that the court make an order to that effect. I will read a little from the record, to show just what occurred at that time. It is claimed by the state, the defendant in error here, that a view of the premises is not a part of the trial and that the defendant has no legal or constitutional right to accompany the jury upon such a view, and further, that if he has such right, he waived it and must be held to have waived it in this case. At the conclusion of the examination in chief of the first witness, the record shows this:
Mr. Wilkinson (counsel for defendant) : I think it would be proper for the sheriff to take this jury over to the scene of this tragedy, and that he had better do that before I cross-examine this witness.
The court: Well.
Mr. Wilkinson: I think .there is a good deal to be gained by it; they understanding the situation there and where this house is located and where this man lived and they can understand it better than if they see a drawing of it. It is not very far from here.' Í would ask'the court to do that.
The court: Is the sheriff acquainted with the scene of this transaction ? . '
*343 The sheriff: I know where it is.
Mr. Wilkinson: Some one can go over there and point it out. The court will instruct the jury about it.
The court: There ought to be some statement made to the jury, so that they will know what to examine.
Mr. Wilkinson: Some one can go with the jury and point ■out the places — somebody that is familiar with the location.
The court: Is there any one that can be agreed upon, to accompany the sheriff and point out the scene of the occurrence?
Mr. Wilkinson: Perhaps there is some one in that locality would be able to do it.
Mr. Summer (Prosecuting Attorney) : I think from the testimony they have before them, they can look around. The number is 836.
The defendant: It is 1204 Camden street.
The court: You had better make a memorandum of what you want designated to the jury.
Mr. Sumner: The premises known as 836 East Broadway, and 1204 Castel street, and 833 East Broadway, where Mr. Flora lived.
-The defendant: 1204 Camden street is the residence that I resided at.
The court then instructed the jury:
“Gentlemen of the jury: you will be sent under the order of the court, in charge of the sheriff, to look at the scene of this ■occurrence, in order that you may better apply the evidence that you hear as it is produced here. You are not sent for the purpose of collecting evidence; but simply for the purpose of seeing the premises in order that' you may more intelligently apply the evidence which you may hear from the witnesses on the stand, and I will say to you now, what Í wish you to understand all through this case, and hereafter I shall say nothing further in detail to you in regard to it except to call your attention to the caution given you now. The statute makes it the duty of the court to caution you every time you are separated, from here, to have no conversation with each other, no conversation with any one else, nor permit anybody to talk to you or talk to any one else in your presence in regard to this case. It is of the utmost importance that you keep your minds entirely *344 free from any conviction as to what the evidence may produce — • and as to what this case ultimately will be; you have heard practically none of the evidence; it is merely opened; and it is important that the jury form no conclusion until they hear, not only all the evidence of the state, but all the evidence of the defense, and in addition to that all the arguments of counsel, and then after that is finished, the law as the court will endeavor to give it to you at the conclusion of the arguments, and then and only then will you be entitled to consider the case in its entirety and form an opinion in regard to it. You will please bear this in mind throughout the case from now until it is finished. You will go in charge of the sheriff and examine these premises and no one else is authorized to have any conversation with you or talk to you about the premises, nor about the case at all, and after you have examined the premises you can ^hen disperse and go to your homes and report at nine o’clock to-morrow morning, and the jury will go with the sheriff at this time.”
• Thereupon the court adjourned. On the following morning after the view of the premises had been had, this occurred:
The court: Mr. Wilkinson, I believe you and the prosecutor accompanied the jury last night?
Mr. Wilkinson: . Yes, sir.
The court: Was the examination of the premises by the-jury as full as you wished to have made?
Mr. Wilkinson: Yes, sir.
Thereupon they proceeded with the testimony. This was on' the following morning, in open court and in the presence of" the defendant. I have read all that occurred at that time, as it is important as bearing on the question of whether or not the-defendant waived his right to accompany the jury, if he had' such right.
The. view of the premises, in criminal cases, is provided for by section 7283 of the Revised Statutes, and that section provides that the court may make such an order, when it is deemed proper, and provides who shall accompany the jury and what may or may not be said to them upon that occasion. The statute reads:
■ “Whenever in the opinion of the court it is proper for the- *345 jurors to have a view of the place at which any material fact ■ occurred, it may order them to be conducted in a body, under the charge of the sheriff; to the place, which shall be shown to them by some person appointed by the court; and while the jurors are thus absent no person other than the sheriff having them in charge, and the person appointed to show them the place, shall speak to them on any subject connected with the trial.”
Section 7031 provides:
“A person indicted for a misdemeanor may, upon his request in writing, subscribed by him and entered on the journal, be tried in his absence, or by the court; no ocher person .shall be ■ tried unless presonally present; but if a person indicted escape, or forfeit his recognizance after the jury is sworn, the trial shall proceed, and the verdict be received and recorded; if the offence charged is a misdemeanor, judgment and sentence shall bé pronounced as if he were personally present; and if the offence charged is a felony, the case shall be continued until the convict appear in court or is retaken.”
This section provides that no person shall be tried for a felony unless he is personally present — unless he escape or he is on bail and forfeits his recognizance. And the constitution provides that the defendant in a criminal case, shall have an open, public trial and the tight to meet the witnesses face to face. Whether a view of the premises, in a criminal case, is ■ to be regarded as and is in fact a part of the trial, and whether what the jury see and learn upon such occasion is evidence, is a question regarding which the authorities are in some conflict, and courts of great respectibility may be found on each side of the question. The authorities have been very fully collected by counsel on both sides of this case.
This question was considered somewhat in the 3d Ohio Circuit Court Reports, 630, and there held:
“When an order is made by the court on motion of the prosecuting attorney, under section 7283, that the jury view the premises where the alleged crime was committed, in charge of the sheriff and a person appointed by the court to point out the ■premises, it is error to permit such view in the absence of the -accused and against his objection.”
*346 It appears in this case that the motion to view the premises was made by the prosecuting attorney, and the defendant objected, but, over his objection, the order to view the premises was made and the jury were conducted to the place-in question and the defendant taken to the jail, and after the view, the jury returned. The court in discussing the question, seem to be of the opinion that this view is to be regarded as a part of the trial and that it is the right of the defendant to be-present; but it will be noted in that case, as I have pointed out,, that the view there made was upon the motion of the prosecuting attorney and over the objection of defendant.
In the qise of Kirk v. State, 14 Ohio, 512, it was held to be-error for a judge to enter the jury room after the jury had retired and in the absence of the defendant, undertake to explain the charge of the court, and it was held that it was the privilege of the defendant to be present at every stage of the trial.
And it was held by the court in Jones v. State, 26 Ohio St., 208, that it was error for the court to call the jury in and instruct them as to the law in the case in the absence of the accused, who was then in jail under the order of the court.
In states outside of Ohio this very question has'been considered and passed upon. In State v. Bertin and Capdevielle, 24 Lousiana Annual Reports, 46, it was held:
“Persons on trial on a charge of burglary have a legal right to confront the witnesses who appear against them face to face. An examination by the jury under an order of the court of the place or house where the crime is alleged to have been committed, away from and out of the presence of the accused, while the trial is going on, is a violation of this right, and the ruling of the judge a. quo directing the jury to retire to such place and make the examination out of the presence of the accused, will be reversed on appeal, and the cause will be remanded to the court a quo for a new trial.”
There is no statute of Louisiana authorizing such a view of the premises, and the court, in this case, ordered a witness for the state to go with the jury and explain to them a diagram of the premises pointed out, and various places. The Supreme Court held that that was error. There was, as I have said, no statute in that state allowing such a view to be had.
*347 In People v. Bush, 68 Cal., 624, it was held:
“Section 1119 of the Penal Code, authorizing a jury to be taken from the court-room pending a trial for murder, to view a place or places elsewhere, does not in its terms authorize such action to be taken unless the defendant be present during the whole time of the view; and if the view is in fact had in his absence, the right secured to him by article 1, section 13, of the constitution, of appearing and defending in person and with counsel, and of being confronted by the witnesses against him on his trial, is violated.”
And the question is discussed at some length in this opinion and a former decision of the Supreme Court of California, the other way, is in effect overruled.
A leading case relied on by plaintiff in error is found in Benton v. State, 30 Ark., 328, where the court say, in the syllabus:
“If, during the progress of a criminal trial, a view of the locality where the crime is alleged, to have been committed is ordered by the court, the defendant must be permitted to accompany the jury.”
On page 348 of this case the court say:
“The record is silent in this case, as to this, as to whether the prisoner asked permission to accompany the jury, or was offered the privilege of doing so.”
“The record in the„case shows that after the order for the view was made, the appellant was again remanded to the custody of the sheriff and it is probable that he was in prison when the view was made by the jury.”
In the case of Carroll v. State, 5 Neb., 31, the last paragraph of the syllabus is to this effect:
“Whenever the court makes an order that the jury view the place in which any material fact in relation to the trial may have occurred, such view should be made in the presence of the prisoner, unless he waive that privilege.”
The trend of these authorities seems to be, that the view is to be regarded as a part of the trial and that it cannot be had in he absence of the defendant, unless he waive it. It will be noticed from these authorities that the majority of them do not hold that the defendant cannot waive this privilege, but that he *348 has a right to go if he wishes to, and should be given permission to do so.
On the other hand, it has been held in some states that this ■view of the premises is no part of- the trial and that the defend.ant has no legal right to accompany the jury; that the view .is not for the purpose of giving evidence to the jury, but to ■ enable, it to understand and apply the evidence that is given in .open court, and it is argued that under statutes similar to ours, . and is painted out by some courts thatbhe statute makes no provision for the defendant to accompany the jury, or for the judge to accompany the jury, and makes no provision for anything that savors of a trial or of the taking of evidence, upon such a view. A leading case where this view is announced is found in Kansas v. Adams, 20 Kan., 311, the opinion in the case being by Judge Brewer, now a justice of the Supreme ■Court of the United States: The court say, in the 5th paragraph of the sllyabus:
“During the trial the jury were sent under the charge of an -officer to view the place where the crime was committed. Neither the judge, the clerk, the attorneys, nor the defendant, ■accompanied them. The record does not show that defendant applied for leave to accompany them, or made any objection to their going, or presented this action of the court as ground for a new trial. Held, no ground for reversing the judgment of conviction, notwithstanding section 10 of the bill of rights pro•vides that, fin all prosecutions the accused shall be allowed to ■appear and defend in person or by counsel, to meet the witnesses face to face/' and section 207 of the code of criminal procedure provides that 'no person indicted or informed against for a félony can be tried unless he be personallv present during the trial.’ ”
On page 323 this question is discussed by Judge Brewer. He quotes the statute under which the view is held, and it is practically identical with the Ohio statute, so that the case is > directly in point: He says:
“This claim of appellant finds some warrant in the authorities. In 3 Whart. Am. Criminal Daw, (7th edition, section 3160), it is said that the defendant ought to be permitted to ac- - company the jury in such a visit of inspection. In The State v. *349 Bertin, 24 La. An., 46, it was held that where the defendant was not permitted to accompany the jury, there was fatal error; while the case of Benton v. State, 30 Ark., 328, to the same effect, is on all-fours with thé case at bar,”
The judge then speaks of the Arkansas case to which I have ■referred, and says:
“There the record is silent as to any request of defendant, and simply discloses that as a fact thé jury went alone in charge of the officer. There also a juror, and not an outside party,, was appointed to show the premises. _ In these respects the cases .are parallel-. ' More than that, the Arkansas statute and constitution are like ours. So that, the case is squarely in point. Notwithstanding, we cannot concur with these authorities, and are of opinion that the action of the court was authorized by the statute and was without error. Section 316, above cited, plainly authorizes just what was done.. They were conducted in a body under charge of an officer. So the statute reads.. One ■of their number was appointed by the court, to show them the place. So runs the language of the section. Nothing is said in it about the presence of the defendant, the attorneys, the -officers of the court, or the judge. Oh the contrary, the language seems to imply that only the jury and officer in charge are to be present. The trial is not temporarily transferred from the court house to the place of view. They are to be conducted in a body ‘while thus absent’. This means that the place of trial is unchanged, and that the jury and the jury only, are temporarily removed therefrom. Just as when the case is finally submitted to the jury, and they ‘retire for deliberation’, there is simply a temporary removal of the jury. The place of trial is unchanged.”
And on page 335, the court say:
“Section 207 does not imply that the defendant must be with the jury, and keep in their presence all the time, but rather that he must remain with the court, ‘and keep in its presence. The court is the fixed and permanent thing; the jury only temporary, and serving- but a partial purpose in the trial. And the defendant must be in the presence of the court, to be personally present during the trial. So that as between the two sections of *350 the statute there is really no conflict; and in exercising the discretion conferred by the one, the court in no manner violated the other.”
The court then proceed to discuss the constitutional right of the defendant and say, in conclusion:
“We are of opinion therefore, that the fact that the jury were sent in a body under charge of an officer to view the place of the crime, unaccompanied by the defendant, is not necessarily an error fatal to the trial, and that where the record discloses no objection thereto by the defendant, ana no application for permission to accompany them, and no error alleged on account thereof in the motion for a new trial, it is too late to insist in this court that the judgment must be reversed therefor.”
' In Shular v. State, 105 Ind., 289, the court say in the syllabus :
“The court may, without error, upon the request of the defendant in a prosecution for murder, send the jury, unaccompanied by the defendant, to inspect the premises where the homicide was committed, as such view does not constitute evidence in the case.”
And, on page 293 of the opinion, they say:
“The court, on motion of the appellant, sent the jury to inspect the premises where the homicide was committed, and did 'not direct that the defendant should be present when the inspection was made; but no request was made' by the defendant that'he should be allowed to be present, nor was there even a suggestion to the court'that he desired to accompany the jury; nor did he, although he was present when the jury left the court room, ask that he be permitted to go with them; nor did he object in any manner to their making the inspection. But the record shows more than this, for it shows that the court directed the attention of the defendant and his counsel to the statute, and stated that it required the consent of the parties, and inquired if they ’consented to the order, to which inquiry, as the record, recites, the defendant's counsel, responded “by renewing their” request, arid the defendant' indicated his assent.”
In that state, it stems that the'statute'requires the assent of the parties. On'page 294, the court say (and this statute is similar to ours) :
*351 “The statute does not intend that the view of the premises where a crime was committed shall be deemed part of the evidence, but intends that the view may be had for the purpose of enabling- the jury to understand and apply the evidence placed before them in the presence of the accused in open court. Deferring, for the present, the consideration of the authorities, and reasoning on principle, we shall have no difficulty in concluding that the statute does not intend that an inspection of a place where a crime was committed shall be taken as evidence. It can not be seriously doubted that evidence can only be delivered to a jury in a criminal case in open court, and unless there is a judge, or judges present, there can be no doubt. The statute does not intend that the judge shall accompany the jury-on a tour of inspection; this is so obvious that discussion could not make it more plain. The jury are not, the statute commands, to be spoken to by any one save by the officer and the person appointed by the court, and they are forbidden to talk upon the subject of the trial. It is the duty of the jurors to view premises, and not to receive evidence, and nothing could be done by the defendant, or his counsel, if they were present,, so that their mesence could not benefit him in any way, nor their absence prejudice him. The statute expressly provides who shall accompany the jury, and this express, provision implies that all others shall be excluded from that right or privilege. It is quite clear from these considerations, that the statute does not intend that the defendant or the judge shall accompany the jury, and it is equally clear that the view obtained by the. jury is not to be deemed evidence.”
The court then goes into a full discussion of the question, reviewing the authorities at length, and holding that there was no error in the trial of the case on this ground.
I call attention also to a case in 8 Oregon. 214, Oregon v. Ak Lee, where the court held:
"Where, on a trial for murder in the first degree, the court, upon the application of the state, directed a view of the place of the alleged killing by the jury; Held, that the omission by ■the court to provide for the presence.of the defendant or his counsel at the view, no application therefor having been made *352 bv the defendant or his counsel at the time the view was ordered, was not error.”
And the court say,- on page 217:
. “The appellant,, if he desired to be present at the view, should then have made application for that purpose. If he had desired to see the place where the homicide took place, in order to be better prepared to make, his defence, doubtless tljie court would have permitted him to accompany the jury in the custody of an officer. But failing to make known any desire to be present at the view, he must be deemed to have waived any privilege which he had in this respect.”
This court held squarely and expressly that this order being made by the court, the defendant indicating ho desire to accompany the jury, he must be held to have waived his privilege.
The Supreme Court of Rhode Island holds likewise in a case found in 14 R. I., 458, State v. Congdon:
“When a view is had in a criminal case the accused may waive, his right to be present at the view. Such a waiver is presumed when he does not ask to be present and makes no objection in the course of the trial after the view; and when the view was allowed at the request of his counsel, who stated that the health of the accused precluded his attendance.”
In the well-known case of Commonwealth v. Webster, 5 Cush,. 295, where Prof. Webster was tried for murder in the first degree, Chief Justice Shaw presiding, a statement of the history of the case in the report shows that the jury were there ■ordered to view the premises, and from the language used, it appears that the defendant did not accompany the jury. On page 298 is this:
“The attorney general after opening the case suggested that it would be desirable that the jury should be permitted to go to the medical college, and take a view of the premises where the murder was alleged to have been committed. The court said that they had no doubt of their authority to grant a view, if -they deemed one expedient; and that views had been granted •of late in several capital cases in this country. And the court .afterwards, on adjourning for the day, directed that the jury ¡should be permitted to take a view of the medical college on the *353 next morning before the coming in of the court attended by two officers and one counsel of each' side.”
The defendant was afterwards convicted of murder in the first degree, as is well known, and was executed.
It has been held in this state that the view by the jury of the premises, in a civil case, except it be in condemnation proceedings where the jury are to judge of<the value of the property, •ip not to be regarded as evidence, nor so to be considered by the jury. I refer to a case in 54 Ohio St., Machader v. Williams, where the Supreme Court say:
“The view by the jury of the property which is the subject of litigation, or of the place where a material fact occurred, which may be ordered in a civil action under section 5191, Revised Statutes, is solely for the purpose of enabling them to apply the evidence offered on the trial.”
And the language of section 5x91, which applies to civil cases, is similar to the language as to criminal cases.
The Supreme Court held in Schweinfurth v. R. R. Co., 60 Ohio St., 215, that where experiments were performed in presence of the jury, by consent of the parties, what the jury saw was to be considered as evidence.
In Blythe v. State, 47 Ohio St., 234, the Supreme Court held that it was not error for the j ury to view the premises, although the defendant refused to accompany the jury. They say:
“It is not error for the jury to'make a view of the place where a felony is claimed to have been committed, under the order of the court and in charge of the sheriff, where the privilege is awarded the accused to accompany the jury, though he may refuse to attend the view.”
Referring to section 7301, the court say:
“This section does not require the actual presence of the accused in court at all times during his trial, but prescribes that one out of the jurisdiction or control of the court, cannot be tried for a felony, and notwithstanding this section (7301 Revised Statutes), 'one on trial for a.felony and not in actual custody may pass in and put of .the court room, and remain absent íor considerablé periods of time,' without .rendering the progress'of the trial during. Jiis absence'erroneous. Therefore, if á'fiew 'sücli'as is authorized by sectión'7283 Revised Statutes, *354 be a part of the trial within the meaning of section 730 x, Revised Statutes, yet, as the court of common pleas expressly granted to plaintiff in error permission to accompany the jury when the view was taken, which privilege, under advice of counsel he declined to accept, he must be deemed to have voluntarily absented himself, and thereby waived his right and privilege to be present when the view was taken. The court-of common pleas having granted him the privilege to accompany the jury, was not bound to compel him to accept it.”
It will be seen from all these cases that there is some conflict in the authorities, but the holdings appear to be pretty uniform that, whether this view is to be considered as a part of the trial or not, the defendant may waive his privilege to accompany the jury and that it is not error to permit the jury to view the premises, under such a statute, in the absence of the defendant, if he waives it. If he requests permission to go, and is refused, or if his 'conduct is not tantamount to a waiver, it raises a different question. We do not think it is necessary for us in this case to decide whether the view of the premises is to be considered a part of the trial or not, or whether the defendant would have a right to accompany the jury if he requested to; we are however inclined to the view that, if the defendant requested permission to accompany the jury, or if he did not waive it, by his words or conduct, that he should be permitted to go with the jury to the premises, and that he would have a right to do so if he, or his counsel, was of the opinion- that it was necessary for him in his defense.
The record, however, shows in this case, that the motion to view the premises was made by the defendant himself — it was not made on motion of the state and granted over the objection of defendant, as in the case cited from the 3rd Ohio Circuit Court Reports, but the defendant’s counsel, after the examination of a witness in chief, suggested to the c ourt, that before he cross-examined the witness, he desired to have the jury view the premises, as I have read, and stated to the court that he thought there would be much gained by such view; and then, in the presence of defendant, a discussion was had, between counsel on both sides and the court, as to the premises that it was necessary for the jury to view — different places and differ *355 ent houses — and the defendant himself took part in this talk, which was held in open court after this motion had been made —and defendant gave the number of-the house where he lived, and stated that it was on Camden street; “1204 Camden street is the residence I resided at.” So that it appears from the record that the action of the court was taken upon the motion of defendant, who asked the court to make this order, through his.counsel, and that he made no request.to accompany the jury; that he heard the court instruct the jury as to what they would do upon this view and who would be permitted to accompany them and that no one would be permitted to speak to them except the sheriff and the person having them in charge. To all of .this he made no objection, and the jury were taken in charge ■by the sheriff to view the place and the defendant was taken back to the county jail.
Affidavits were filed on motion for a new trial, that of the defendant, among others, and also the affidavit of his counsel, and that of the prosecuting attorney. Mr. Wilkinson, counsel for defendant, makes affidavit and says that at the time the jury left the court room he was busy; that he overtook the jury on Summit street and then noticed that the defendant was ■not along, and then said to Mr. Sumner, the prosecuting attorney, “the defendant should go with the jury to view the premises.” Mr. Sumner replied, “Did you want the defendant along ?” That “affiant said ‘yes, he ought to go along with the jury.” He then says that at this juncture the car came along and they all Went to view the premises. There was no formal objection made at that time to the jury proceeding without the defendant; no request made by Mr. Wilkinson that the jury return to the court house and have the defendant, by order of the court, accompany them.
Mr. Sumner says, in his affidavit, that he has no recollection of hearing Mr. Wilkinson say “Yes, he ought to go along with the-jury.” ITe says that Mr. Wilkinson did suggest to him that the defendant was not along. The defendant himself in his affidavit says “that there was an order made by the court for the jury, during the progress of the trial, to visit the place ■ where the alleged crime was committed, and the: jury was-taken away from the court room by the sheriff, and I; the affiant, .'was *356 taken to the county jail and locked up. No one asked me to go-with the jury, and, in fact, nothing was said by any one to me about going with the jury, and I was not with the jury when the premises or places were viewed by them on East Broadway and Camden street.”
The defendant does not make oath in his affidavit that he desired to accompany the jury or had any wish to go with them.
According to his affidavit the jury were taken away from the court room before he was taken away to the county jail. He simply makes complaint that nothing was said to him about his accompanying the jury; nor does he suggest in his affidavit that he was not advised of his right to accompany the jury, if he had such a right.
Upon the return of the jury to the court room the next day— as I have read from the record — -the court asked Mr. Wilkinson, counsel for defendant, in the presence of the prisoner, if the view was satisfactory to him, and he replied that it was, and no objection was then made, either by counsel for defendant’ or by defendant himself.
In our judgment, where the defendani is represented by counsel — as he is this day and age — and entitled tó be represented by counsel appointed by the court if he has no means with which to employ counsel, when his counsel is present and he is present in court, if he asks the court for such an order as this to be made and the whole matter is talked over before him in open court, defendant himself taking part in that talk and aiding in giving directions as to the places that the jury were to visit, when the jury is taken from the court room in pursuance of such an order, by the sheriff, in his presence, without any objection upon his part, or any request or intimation that he desires to accompany them, either from himself or through his counsel, and when he is then taken back to the county jail, without any such suggestion on his part, and when the view is had without anything improper having occurred, and the defendant and upon the return of the jury, through his counsel, in open court and in actual presence of. the defendant, expresses himself as satisfied with the view that has been had and makes no complaint or objection during, the trial; of the-case until after a verdict-is returnéd *357 against him in such case, in our judgment, he should be held and is held by us to have waived his right to accompany the jury upon such view, if in fact he had a strict legal right to do-so.
The defendant, in a criminal case, may waive some of his rights and privileges the same as he may in a civil case, and we find no error in the proceedings in the trial on this account or in the action of the court below in overruling the motion for a new trial so far as this ground is concerned.
Now, briefly as to the second ground of alleged error. It is-claimed that the court erred, in its charge to the jury, in not giving a sufficient definition of the crime of manslaughter,, and erred in refusing a request to give a definition of manslaughter after the argument and before the general charge, and this same request included instructions on the question of reasonable doubt.
It appears from the record that before the argument to the jury, the court gave several instructions, at the request of the defendant below, which were upon the question of reasonable doubt, and upon the question of insanity, and a definiton in the language of the statute,, defining the crime of murder in the first degree, in the second degree, and manslaughter, and read to the jury the sections of the statutes. After argument, counsel for defendant asked the court to give this instruction:
“Manslaughter is defined to be the unlawful killing of another without malice either express or implied which may be either voluntary upon a sudden heat or inadvertently, but in the commission of some unlawful act.”
Then follows, as a part of the same request, an instruction upon the question of reasonable doubt. This request was made after argument and just before the court charged the jury. The ■court charged fully in its general charge, upon the question of reasonable doubt .and no complaint is made as to that. But, it is urged that the court should have given this definition of manslaughter. It is a definition substantially, and I think probably exactly, as laid down by Blackstone, and is a corV rect legal definition of ‘manslaughter. As requested of .the court, it was an abstract proposition of law without .any referr pnce to the facts of the case on trial, -without any ■ limitation. *358 ■without any explanation, and without any qualification so far as the facts of the particular case were concerned, but was a pure, abstract proposition of law — a legal definition of manslaughter. The court had already defined manslaughter to the jury at the request of defendant, in the language of our statute, as it is at this time, and refused this request. In the general charge the court again defined manslaughter in the language of the statute and then followed that with a further description of the crime of murder in the first degree and murder in the second degree, and said further, after defining murder in the second degree: “while manslaughter is the unlawful killing of a person and need not include the intention, if the killing were unlawful.’’ This proposition of law, or definition, as requested to be given to the jury, without any explanation or qualification, might have been misleading to the jury. ■ Nothing being said about the facts of the particular case, the court was asked to say to the jury simply: “Manslaughter is defined to be the unlawful killing of another without malice either express or implied which may be either voluntary or upon a sudden heat or inadvertently but in the commission of some unlawful act.” Nothing is said'about the passion which will reduce the homicide from murder to manslaughter, except the bare words “upon a sudden heatthere was no explanation to the jury that there must be some reasonable provocation or cause for such heat, to reduce the crime to manslaughter. The jury might have understood from that that •anger alone — sudden heat — was sufficient,- whatever the cause or provocation, to reduce the crime to the degree of manslaughter. The defendant testified, according to the record, that he had some trouble with his wife at the time of the killing, that she said something to him and struck him with her shoe — but he does not claim in'his testimony that he was thereby enraged, or that by that conduct of her’s and that language; 'he was thrown into a “sudden heat;” the defense in the case was insanity and the evidence was directed towards that defense, and the instructions to'the jury were directed towards •that defence, the instructions requested by the defendant before argument and'the instructions given by the court in its ¡general -charge. - The -whole gist of the defense, practically, wás *359 ■that at the time of the commission of the defense the defendant was insane. He claimed that this woman — who at the time he married her was about 18 years old — was guilty of misconduct .and improper conduct after her marriage to him and that it • occasioned a great deal of trouble and mental anxiety on his part, and finally they had this meeting upon this day when she was killed, that he made a certain request of her and she struck him with her shoe and charged him with desiring to act improperly with the little girl, and he' says that from the time she said that and struck him with her. shoe, he knew nothing and ■ could remember nothing until some time afterward, and when he regained his reason he found that he had shot and killed ' his wife. His claim is not that he was enraged or thrown into a passion or “sudden heat” by what occurred upon that oc- ■ casion, but that his reason was overthrown; his mind, he says, became a blank and he recollects 'nothing and knows nothing that occurred after that time; he claims that he knew nothing of -the shooting or of the transaction, and does not undertake to tell it, and when he regained his senses he claims to have found himself partially paralyzed. The evidence is clear in the case that he shot and killed his wife. Now, in our judgment, it can-mot be held that the defendant below .was prejudiced by the refusal of the court to give this request to the jury. The court had defined manslaughter in the language of the statute, at the •request of defendant; he defined it again in his general charge, after this request. There is no evidence whatever in the record that the defendant killed his wife at that time on account of passion or sudden heat — and I mean by that that he does not testify or claim, nor is there any evidence that he was in such ■ a condition as that, or that her conduct caused any such con•dition at the time he shot her; his defense and the defense that .he asked the jury to adopt — and upon which he asked the jury to acquit him, was — that at the time he killed his wife He was insane and therefore, irresponsible; what he asked the jury to believe was that her conduct was such on that occasion .as that it deprived him of his reason, temporarily. Having tried the case upon that theory and asked the jury for an acquittal upon that ground and that alone, we do not think he ■can complain that the jury did not adopt some other view which *360 neither he himself nor his counsel claimed, to-wit, that at the tifne he killed his wife, he was in such passion that it should have reduced the crime to manslaughter.
In view of the theory upon which the case was tried, the theory of the defense, and the instructions which were given upon the different grades of homicide, and in view of the fact that this request, standing alone unqualified and unexplained, might have been and probably would have been misleading to the jury, we are of the opinion that there was no error prejudicial to defendant in the refusal of this request. And we are further of the opinión that there was no prejudicial error in the court failing to define manslaughter any further than he did in the general charge, no further instruction being asked by the defendant after the general charge was finished.
It is complained further, that there was misconduct of the jury during the trial, at the view 'and after their retirement. It appears from affidavits, that while the jury were viewing the premises, one of them asked some question of a woman in regard to the premises, but it does not appear that any answer was made or that anything was done upon the view or said that could in any way prejudice the defendant.
The jury retired along in the afternoon and were instructed by the court that they would be provided with a place to sleep, and the sheriff was ordered to furnish them with necessary food; and it is complained that the sheriff and jury were guilty of misconduct during the night in this, that about II o’clock at night they were furnished with a lunch by the sheriff; the sheriff asked the jury if they wished a lunch, and, accordingto th; affidavit, some of them responded that they did. He furnished them with coffee and some doughnuts, I think it was, and this lunch was eaten there. We are unable to see any misconduct on the part of the sheriff in this respect. He had been ordered by the court to furnish the jury with food, which was a proper order, and usual and ordinary in all such cases. In order to furnish the jury with food it might be necessary for the sheriff to speak to the jury and ask them what .they would like,'.whether they would’ like this, or that,'to eat,.and a conversation of that kind, necessary in furnishing, them with fdochand clrihk-during their deliberations — there being'nothing *361 said about the trial of the case or anything that could be cpnr strued as prejudicial to the defendant — would not be improper conduct; and we are unable to see anything improper in the sheriff asking the jury, after they had been deliberating upon the case until nearly midnight, whether they desired, anything to eat or not before they went to sleep. The jury were taken to the jail, where there were some beds, to sleep that night; and were not left in the jury room, and at the time of the lunch they were at the jail and about to go to bed. The sheriff did not force his attention upon the jury; he did not go to the jury-room and ask them if they wanted anything to eat, but this was done upon taking them over to the jail to put them to bed,, as he had been ordered to do by the court. He asked them if they desired anything to eat, they responded that they did, and he gave them a simple lunch. There was nothing improper in this, so far as we can observe, or that could in any way prejudice the rights of defendant.
L. H. Wilkinson, for Plaintiff in Error.
Chas. B. Sumner, for Defendant in Error.
Upon a view of the whole record, we are of the opinion that the defendant’s rights were fully protected and guarded' by the court, at every stage of the trial; that he was well defended, and that the jury were fully warranted under the evidence in the case, in finding him guilty of murder in the second degree as they did; and, as was suggested by the court below in overruling the motion for a new trial, if he had been found guilty •of murder in the first degree, it would have been difficult to see how a court could set aside such a verdict. Being of the opinion that he had a fair trial, that there were no errors •committed by the court and that he was justly convicted, the judgment of the court of common pleas will be affirmed.